### S92A0543. STARKS v. THE STATE.
(416 SE2d 520)

CLARKE, Chief Justice.

John Thomas Starks was convicted of the malice murder of Horace Eugene Hardin and sentenced to life imprisonment.[1] The defendant was also convicted of two counts of aggravated assault and one count of possession of a firearm during the commission of a crime for which he was sentenced to a term of years.

The defendant made three inconsistent statements to police regarding the victim's death, modifying his story each time police informed him of new evidence discovered in their investigation. The defendant initially stated that he had gone to his restaurant in the middle of the night to check it because it had been burglarized a few days before. He stated that he saw the victim run from his restaurant with a shotgun. As the victim ran toward him, the defendant shot him. The defendant stated the victim fell where police found him. In his final statement to police the defendant stated that the victim ran up by a truck that was on the defendant's property and that the defendant began beating the victim about the face and head with a bottle. The defendant stated that he turned to leave, but that the victim pulled a shotgun out of the truck and ran towards him. The defendant stated that he shot the victim, then moved the victim's body "into the light."

The defendant originally entered a guilty plea to one count of involuntary manslaughter, but later withdrew it due to dissatisfaction with the sentence recommendation. At the pre-sentence interview with a probation officer the defendant stated that he found the victim

---

[1] The crimes occurred November 15, 1989. The defendant was indicted May 3, 1990, and tried September 17-20, 1990. The jury returned its verdict September 20, 1990. In addition to the convictions for which the defendant was sentenced, the jury found the defendant guilty of felony murder. However, the trial court concluded this crime merged with the conviction for malice murder and set it aside. The defendant filed a motion for new trial on October 18, 1990 which was denied November 20, 1991. His appeal to this court was docketed on February 6, 1992, and submitted on briefs March 20, 1992.

hiding in a truck on his property. The victim stated he needed a place to sleep, but the defendant believed the victim was there to burglarize his restaurant, and began beating the victim with a ketchup bottle which was in the truck. As the victim got out of the truck, the defendant's gun accidentally discharged, striking the victim in the face. The defendant then dragged the victim away from the truck to the area where his body was found. The defendant stated that the victim did not have a gun, so he placed his shotgun in the victim's hand. The defendant further stated that the victim was "asking for trouble" by being on his property. Over the defendant's objection, the probation officer was permitted to testify to this statement at trial.

In his own defense the defendant testified to essentially the same series of events he had relayed to the probation officer. He testified that his gun had discharged accidentally, and that he moved the victim's body, placing the shotgun in his hand, because he was afraid of the police.

1. A rational trier of fact could have found the defendant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial the state gave notice to the defense of its intention to introduce evidence of similar transactions. The defendant argues the trial court erred in denying his motion in limine to prevent admission of this evidence.

On direct examination the defendant testified that prior to this incident other persons had shot at him while he was on his business premises and that he had returned fire. On cross-examination, the state asked the defendant how many persons he had fired upon. The defendant responded that on separate occasions he had fired on two men who were unlawfully on his premises, and was permitted to testify to the circumstances of each situation. When the defendant denied shooting at a third person, the state did not pursue the matter.

The evidence of these independent acts by the defendant was admissible to show bent of mind and course of conduct. It is undisputed that the defendant was the perpetrator of these acts, and there is sufficient similarity between the acts alleged and the circumstances of the crimes charged in this case. Therefore the trial court did not err in permitting the cross-examination of the defendant as to this issue. *Chastain v. State*, 260 Ga. 789 (3) (400 SE2d 329) (1991).

3. Following his initial plea of guilty to a charge of involuntary manslaughter, the defendant made the aforementioned inculpatory statement to the probation officer conducting his pre-sentence interview. The probation officer was permitted to testify to this statement at the trial of defendant's case, but was neither identified as a probation officer, nor was the fact of the defendant's earlier guilty plea divulged. The defendant alleges that his statement should not have

been admitted because it was made following his request that an attorney be present during his interview with the probation officer, and thus was made in violation of his Sixth Amendment right to counsel.

The defense's argument is premised on a notation in the probation officer's report that the defendant requested an attorney. However, this report is not in the record before us. Rather, all that the record contains is the colloquy between the trial court and the attorneys in this case as to their not altogether consistent recollections of the contents of the probation report. The record indicates that while both the attorneys for the state and the defense had read the probation officer's report, neither had been permitted a copy of it. There is apparent agreement that when the defendant indicated his desire to have his attorney present, the probation officer rescheduled the appointment, but that defense counsel did not appear at the second interview with the defendant because he was "either on trial or on vacation." The record is silent as to what transpired between the defendant and the probation officer when he reappeared for the rescheduled meeting.

It is undisputed that the defendant was not in "custody" for the purposes of invoking the Fifth Amendment, see *Minnesota v. Murphy*, 465 U. S. 420, 430 (104 SC 1136, 79 LE2d 409) (1984), and the defendant does not claim his statement was made in violation of his Fifth Amendment right to counsel.

Rather the issue before us is whether, after the defendant invoked his Sixth Amendment right to counsel, he initiated the conversation which resulted in the statement in question, and voluntarily waived his Sixth Amendment right to counsel. In *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986), the United States Supreme Court held that once a criminal defendant invokes his Sixth Amendment right to counsel, his subsequent waiver of that right, even if knowing and voluntary, is presumptively invalid if secured pursuant to government-initiated conversation, and that statements obtained in violation of that rule may not be admitted in the state's case-in-chief.[2] However, the United States Supreme Court has more recently held that "nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney." *Michigan v. Harvey,* 494 U. S. 344, 352 (110 SC 1176, 1181, 108 LE2d 293) (1990).

As pointed out above, the record is silent as to what transpired

---

[2] Subsequent Supreme Court decisions have held that *Michigan v. Jackson* "simply superimposed the Fifth Amendment [right to counsel] analysis of *Edwards [v. Arizona]* onto the Sixth Amendment." See *Patterson v. Illinois*, 487 U. S. 285 (108 SC 2389, 101 LE2d 261) (1988), and *Michigan v. Harvey*, 494 U. S. 344 (110 SC 1176, 1180, 108 LE2d 293) (1990).

between the defendant and the probation officer at the rescheduled interview. There is no copy of the probation officer's report in the record, and neither attorneys nor the court had access to it at the time the court ruled that the defendant's statement was admissible. The probation officer did not testify to any of the events surrounding the defendant's statement to her. Last, it is not clear from the record whether the trial court ruled on the defendant's Sixth Amendment claim. The record indicates that the trial court focused on Fifth Amendment issues and may have ruled that the statement should be admitted because it was non-custodial. For all of these reasons we remand the case to the trial court for the limited purpose of clarifying who, after the defendant invoked his Sixth Amendment right to counsel, initiated the conversation which resulted in the defendant's statement. Compare *Parker v. State*, 255 Ga. 167 (1) (336 SE2d 242) (1985).

If the trial court concludes that the probation officer initiated the conversation, the rule of *Jackson*, supra, applies, and any subsequent waiver of that right is presumptively invalid. If the trial court finds that the defendant initiated the conversation, the burden will be on the state to prove that his waiver of his Sixth Amendment right to counsel was knowing and voluntary. *Michigan v. Harvey*, supra, 110 SC at 1182; *Brewer v. Williams*, 430 U. S. 387, 404 (97 SC 1232, 51 LE2d 424) (1977).

*Judgment affirmed in part and remanded in part. All the Justices concur.*

DECIDED MAY 27, 1992.

*Nebl & Breeding, John F. Nebl,* for appellant.
*Robert E. Wilson, District Attorney, Barbara B. Conroy, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, C. A. Benjamin Woolf, Staff Attorney, Shawn Ellen Lagrua,* for appellee.