Steven M. HAYES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1998–SC–0293–MR.

Supreme Court of Kentucky.

Aug. 24, 2000.

**464**

Edward Brian Davis, Louisville, for Appellant.

Albert B. Chandler, III, Atty. Gen., Courtney J. Hightower, Asst. Atty. Gen., Criminal Appellate Division, Frankfort, for Appellee.

STUMBO, Justice.

Appellant, Steven M. Hayes, was convicted of one count of first-degree armed robbery and eight counts of unlawful imprisonment for his involvement in the rob-

bery of a Kingfish restaurant in November of 1996. He was sentenced to twenty years' imprisonment and now appeals as a matter of right. He raises a single issue in this appeal.

Following some commendable investigative work, Detective Larry Duncan located and interviewed two suspects in the November 1996 Kingfish robbery. Both suspects eventually confessed their involvement in the crime to Detective Duncan, and both implicated Appellant in the robbery. On December 17, 1996, Detective Duncan testified before the Jefferson County grand jury, and the grand jury indicted Appellant for one count of armed robbery and eight counts of kidnapping.

On December 21, 1996, Duncan had the Radcliff, Kentucky police advise Appellant that the Jefferson County police wished to question him. Appellant's parents located him and accompanied him to the Jefferson County police department. Appellant was asked to ride in Radcliff and Jefferson County police vehicles while his family followed in their own car. Upon their arrival at the police department, Appellant and his family were met by Detective Duncan. He told them Appellant was free to leave at any time, but that he would like to ask Appellant some questions. When Appellant's mother tried to accompany Duncan and her nineteen-year-old son to the interrogation room, Duncan told her that she could not come along.

Once they were alone, Detective Duncan informed Appellant of his rights. Once he was satisfied that Appellant understood those rights, he asked if Appellant would waive those rights. Appellant agreed to do so and signed a waiver of rights form. Eventually, Appellant gave a taped statement confessing to the crime.

Appellant now claims the confession was not voluntary because Detective Duncan did not tell him he had been indicted for the robbery before he (Appellant) signed the waiver of rights and made statements to Duncan. Appellant notes that an accused person's Sixth Amendment right to

counsel attaches upon the commencement of adversary proceedings, and that law enforcement officials may not interrogate the accused in the absence of counsel absent a knowing and intelligent waiver of that right. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Appellant further argues that, despite the fact that he signed a waiver of rights form which set forth his Fifth Amendment rights as guaranteed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), his waiver was not "knowing and intelligent" because he was not made aware that he was currently under indictment at the time he signed the waiver and agreed to speak with the detective. We disagree, and believe the case of *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), to be dispositive of this issue.

■ The facts of *Patterson, supra,* differ significantly from the instant case in one key respect—in *Patterson,* the defendant was aware he was under indictment at the time he signed the *Miranda* waiver of rights form. Here, Appellant clearly was not. Nevertheless, *Patterson* specifically sets forth what information an accused must have before he or she can effect a knowing and intelligent waiver of the Sixth Amendment right to counsel. Essentially, the accused must be fully aware "of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 487 U.S. 292, 108 S.Ct. at 2395, 101 L.Ed.2d at 272 (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)). Specifically, the *Patterson* Court stated:

> [T]he key inquiry in a case such as this one must be: Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel?

*Id.* The Court analyzed both the content and purpose of the *Miranda* warnings, and concluded that an accused's waiver of his right to counsel following said warnings was sufficient to establish a knowing and valid waiver of his Sixth Amendment right to counsel.

First, the *Miranda* warnings given petitioner made him aware of his right to have counsel present during the questioning. By telling petitioner that he had a right to consult with an attorney, to have a lawyer present while he was questioned, and even to have a lawyer appointed for him if he could not afford to retain one on his own, [the police] conveyed to petitioner the sum and substance of the rights that the Sixth Amendment provided him. "Indeed, it seems self-evident that one who is told he" has such rights to counsel "is in a curious posture to later complain" that his waiver of these rights was unknowing. Cf. *United States v. Washington,* 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977). There is little more petitioner could have possibly been told in an effort to satisfy this portion of the waiver inquiry.

Second, the *Miranda* warnings also served to make petitioner aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning. Petitioner knew that any statement that he made could be used against him in subsequent criminal proceedings. This is the ultimate adverse consequence petitioner could have suffered by virtue of his choice to make uncounseled admissions to the authorities. This warning also sufficed—contrary to petitioner's claim here, to let petitioner know what a lawyer could "do for him" during the postindictment questioning: namely, advise petitioner to refrain from making any such statements. By knowing what could be done with any statements he might make, and therefore, what benefit could be obtained by having the aid of counsel while making such statements,

petitioner was essentially informed of the possible consequences of going without counsel during questioning. If petitioner nonetheless lacked "a full and complete appreciation of all of the consequences flowing" from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum. Cf. *Oregon v. Elstad,* 470 U.S. 298, 316–317, 105 S.Ct. 1285, 1296–1297, 84 L.Ed.2d 222 (1985).

*Id.* at 487 U.S. 293–94, 108 S.Ct. at 2395–96, 101 L.Ed.2d at 273 (footnotes omitted).

 Despite the above analysis, Appellant would have us hold that Detective Duncan's failure to tell Appellant he was under indictment at the time Duncan asked him to waive his right to counsel, rendered the waiver void. We think not. Appellant knew the two other suspects had confessed and implicated him in the robbery. Appellant was advised that any statement he made could be used against him in subsequent criminal proceedings. As the high court points out, this is the "ultimate adverse consequence" Appellant could have suffered by virtue of his choice to speak to Detective Duncan without an attorney at his side. He was informed of this possible consequence, but nevertheless chose to speak with the detective. He clearly made this decision knowingly and intelligently. As Appellant does not allege (and the evidence does not show) that his statement was in any way coerced because his "will was overborne and his capacity for self-determination critically impaired," we find his confession was entirely voluntary. *See Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1986).

Lastly, Appellant attempts to argue the Commonwealth, through its agent Detective Duncan, violated SCR 3.130–4.2—Communication with Person Represented by Counsel. Appellant does not allege that he already had hired counsel or that he indicated in any way that he wished to do so at the time Duncan questioned him. Rather, Appellant apparently argues that his mere status as an indictee automatically converted him into a "person represented by counsel." This argument is absurd. Absent a showing that Appellant was actually, not theoretically, represented by counsel at the time Duncan interviewed him, there can be no violation of SCR 3.130–4.2. Furthermore, there is no evidence to indicate the prosecutor asked Duncan to speak with Appellant and therefore Duncan cannot be considered the agent of an attorney. Detective Duncan, himself, is not an attorney, and therefore is not subject to SCR 3.130–4.2 or any of the Kentucky Rules of Professional Conduct. Therefore, even if Appellant were represented by counsel, Duncan could not have violated SCR 3.130–4.2 by speaking with him.

For the reasons set forth above, Appellant's convictions are hereby affirmed.

All concur.