JOURNAL ENTRY AND OPINION
Defendant Skender Kajoshaj appeals from his conviction for involuntary manslaughter. For the reasons set forth below, we affirm.
On December 29, 1998, defendant, Timothy Snider, Edward Telling, Joseph Phillips and Eric Thomas were indicted pursuant to a four count indictment in connection with an altercation during which Anthony Stumpf was killed. The first count charged defendant with involuntary manslaughter and provided in relevant part as follows:
 such death was the proximate result of Timothy Snider committing or attempting to commit a felony.
The remaining counts charged defendant with felonious assault upon Stumpf's friends, Craig Mattingly, Tammi Mattingly, Erin Dmitriev, and Joseph Kurilla, Jr.
The record further reveals that at defendant's arraignment, bond was set at $250,000 and as a condition of bond, defendant was to have no telephone privileges. On April 7, 1998, defendant filed a motion to restore his telephone privileges which indicated relevant part as follows:
 Defendant was not represented at his arraignment and did not understand nor could he adequately respond to Det. Cipo's allegations regarding the termination of his telephone privileges. Except for this testimony, Defendant was not warned nor was he aware that any of his actions or behavior would result in the loss of his telephone privileges.
 It is necessary for Defendant to have at least limited telephone privileges with his [father, mother, and sister who live in Michigan and his cousin who lives in Cleveland.]
 Defendant's father, mother, sister and cousin do not speak fluent English. Without defendant being able to speak with the above family members, counsel for defendant will have a significantly more difficult time communicating with these individuals which invariably impede Defendant's ability to prepare his defense.
The trial court denied the motion but subsequently ordered that defendant was permitted to telephone his attorney.
Defendant also moved to suppress statements that he made to Shannon Whelan regarding this matter and statements made to the Cleveland Police after indictment. The trial court denied both motions. Thereafter, the state dismissed the felonious assault charges which alleged attacks upon Erin Dmitriev and Joseph Kurilla, Jr. and amended the involuntary manslaughter to indicate that Stumpf's death was the proximate result of defendant committing or attempting to commit a felony. The motion was unopposed by defendant's attorney and was granted on June 28, 1999.
The state proceeded with its case and presented evidence that on the night of November 5, 1998, Stumpf, Kurilla, the Mattinglys and Dmitriev went to the Crazy Horse. It is undisputed that Stumpf took the drug ecstacy at this time but according to his companions, this made him subdued. The group left at closing time, and as they entered the parking lot, they observed defendant, with his friends, Snider, Telling, Phillips and Thomas with helium balloons. Eric Thomas repeatedly asked whether the Stumpf group told him to shut up. Stumpf stated that his group did not want trouble. Thomas punched Dmitriev and Stumpf then hit him. Joseph Phillips punched Stumpf in the face and defendant's group proceeded to beat Stumpf. Two of the men in defendant's group held him down while defendant and another man hit Stumpf. The fight stopped temporarily and Stumpf was leaning on a car. His nose was bleeding and he again indicated that there was no need to fight. Dmitriev confronted defendant and he struck her, causing the fighting to resume. Defendant struck Mattingly then walked to Stumpf's direction. During this second beating, Stumpf became unconscious. The group then approached Mattingly and said we have got the big guy down, now what are you going to do. Defendant's group began to assault Kurilla and Mattingly. Stumpf's group eventually told defendant's group that they saw the license number of their car and that they were calling police. Defendant indicated that he wouldn't be caught since he lived in New York. Defendant's group then looked at Stumpf then left.
Stumpf was transported to MetroHealth Hospital where he was subsequently placed on life support. He had a fractured skull and brain swelling. He was later declared brain dead and was removed from life support systems.
On November 7, 1998, defendant called his former girlfriend, Shannon Whalen. At this time, Whalen was fearful of the defendant and had begun taping his telephone calls in the event that he threatened her. Defendant told Whalen that he and his friends were in a fight at the Crazy Horse and someone died. She asked if defendant actually struck the man and he indicated that they all did.
Defendant moved for acquittal pursuant to Crim.R. 29 at the close of the state's case. The trial court denied the motion and defendant testified against the advice of his counsel. Defendant admitted that in 1996, he was convicted of larceny in Michigan and was on parole following his release in 1998. The conditions of his parole prohibited him from leaving the state but he came to Cleveland in September 1998.
Defendant further testified that he met co-defendant Joe Phillips shortly before this incident. He met co-defendants Snider, Thomas or Telling through his friend Zef on November 5, 1998 when the group decided to go to the Crazy Horse. Zef subsequently left to get something to eat and defendant stayed at the bar with Zef's friends. Later, when the bar closed, defendant observed an altercation involving Zef's friends. Defendant stated that it lasted two or three minutes. Defendant recognized Joe Phillips in the fight. The fight briefly stopped. At this time, defendant asked Stumpf what was going on and Stumpf indicated that he did not know and thought that everyone needed to calm down.
Defendant further stated that Erin Dmitriev and Joseph Phillips then began calling one another names and Phillips and the decedent again began to fight. Each man's friends joined to help. As the fight broke up, defendant observed the decedent resting on one knee. Defendant's group then left the scene in Philips' car and defendant subsequently called Whalen from Zef's house. He testified that he told Whalen that they all hit Stumpf because he was trying to convince her to pick him up. Defendant later left the country but returned when he learned that he was indicted in connection with Stumpf's death.
On cross-examination, defendant admitted that he held Dmitriev in a bear hug, but claimed he did so to protect her. He denied telling the detectives that he hit her.
Defendant was subsequently convicted of involuntary manslaughter and acquitted of the felonious assault charges. He was sentenced to ten years imprisonment. Defendant now appeals and assigns seven errors for our review.
Defendant's first and sixth assignments of error are interrelated and state:
 THE COURT ERRED, AND THE DEFENDANT WAS DENIED DUE PROCESS, WHEN SHE ALLOWED THE STATE TO AMEND THE INDICTMENT (WHICH ORIGINALLY CHARGED THAT ONE TIMOTHY SNIDER WAS THE PRINCIPAL OFFENDER AND CHARGED SKENDER KAJOSHAJ AND OTHERS AS BEING AIDERS AND ABETTORS) TO CHARGE SKENDER KAJOSHAJ AS BEING THE PRINCIPAL OFFENDER. THE APPELLANT'S RIGHT TO A UNANIMOUS VERDICT WAS VIOLATED WHEN THE COURT SUBMITTED TO THE JURY TWO (2) SEPARATE AND DISTINCT THEORIES ON WHICH IT WAS THE DEFENDANT COULD BE CONVICTED; WITH THIS BEING SO, IT FOLLOWS THAT ONE CANNOT TELL FROM THE GENERAL VERDICT RETURNED IN THIS CASE WHETHER THE JURY WAS UNANIMOUS ON EITHER THEORY.
Within these assignments of error, defendant asserts that the trial court committed reversible error in permitting the state to prosecute him as either the principal offender or an aider and abettor of the principal offender and in failing to require the state to elect at the start of the proceedings whether it would try defendant as a principal offender of an aider and abetter.
The complicity statute, R.C. 2923.03, provides in part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense.
* * *
 (F) A charge of complicity may be stated in terms of this section, or in terms of the principal offense. (Emphasis added.)
In Hill v. Perini (C.A.6, 1986), 788 F.2d 406, cert. denied,479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986), the Court noted that the practice of permitting charges of complicity to be stated in terms of the complicity statute of the principal offense has been established in Ohio for over 100 years, citing to Hanoff v. State (1881),37 Ohio St. 178. The Hill Court further stated:
 The Ohio Supreme Court continues to approve of such a practice and the State Bar of Ohio should be on notice of the validity of the procedure which has been employed in this case. In State v. Perryman, 49 Ohio St.2d 14, 358 N.E.2d 1040
(1976), vacated in part on other grounds sub nom., Perryman v. Ohio, 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978), the Ohio Supreme Court explained:
 During final arguments, the prosecutor suggested to the jury that the appellant could be held liable as an aider and abettor to the crime. Over appellant's objection, the court charged on aiding and abetting.
 Appellant argues such a charge was prejudicial to his rights. Early in the trial, appellant had filed a motion for a bill of particulars. In response, the state had said that the appellant did shoot and kill one Lawrence J. Busch while attempting to commit aggravated robbery. Appellant argues that once the state particularized that the appellant himself had shot and killed Busch, it could not shift its theory of criminal responsibility. In short, appellant concludes that he had a right to be tried, not as an accomplice to the Busch homicide, but as the principal in the first degree.
 This assignment of error is without merit. Upon an examination of the record, it is evident that the state consistently argued that the appellant was the triggerman. It was only on direct examination of defense witnesses that any evidence of aiding and abetting came before the jury. Since appellant presented evidence from which reasonable men could find him guilty as an aider and abettor, the court's instruction was, therefore, proper.
Perryman, 49 Ohio St.2d at 27-28, 358 N.E.2d 1040.
It thus appears that under Ohio law, the State may charge and try an aider and abettor as a principal, and if the evidence at trial reasonably indicates that the defendant was an aider and abettor rather than a principal offender, a jury instruction regarding complicity may be given. At the time of appellant Hill's trial, this practice was settled law in Ohio. It thus appears that appellant, through his attorney, did have legal notice of the possibility that the jury might be given a complicity instruction.
Similarly, in Anderson v. Coyle (C.A.6 1999), 173 F.3d 853, 854, the Court stated:
 * * * there was no constructive amendment to the indictment by the trial court's jury instructions. There is no likelihood that Anderson was convicted of an offense other than that charged; Ohio statutory and case law put him clearly on notice that, although charged as a principal, he could be convicted for complicity, conspiracy, or aiding and abetting. The state court of appeals expressly held that the jury instructions were permissible in light of Ohio Rev. Code SS 2923.01 and 2923.03(A)(3) and the evidence presented. Both federal and state courts have issued decisions supporting the state court's holding.
In accordance with the foregoing the state was permitted to pursue the charge in terms of defendant's complicity or in terms of the principal offense of involuntary manslaughter. In this instance, the state's amendments to the indictment asserted the charge in terms of the principal offense which is proper pursuant to R.C. 2923.03(F) and the state consistently maintained that defendant aided and abetted in the involuntary manslaughter. It did not shift its theory. (Tr. 8, 441-453).
The first and sixth assignments of error are without merit.
Defendant's second assignment of error states:
 THE COURT ERRED WHEN SHE REFUSED TO REQUIRE THE ACCUSED'S CUSTODIAN, ALTHOUGH HE WAS ONLY A PRE-TRIAL DETAINEE, TO ALLOW HIM TO USE THE TELEPHONE — EVEN TO CALL HIS PARENTS AND RELATIVES.
Defendant next asserts that the trial court erred in limiting his pretrial telephone privileges.
The Sixth Amendment of the Constitution of the United States provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The essence of this right is the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial. Powell v. Alabama (1932), 287 U.S. 45, 53 S.Ct. 55,77 L.Ed. 158; Michigan v. Harvey (1990), 494 U.S. 344, 349,110 S.Ct. 1176.
In this instance, defendant's telephone privileges were limited to calls to his attorney following complaints that defendant had been improperly contacting potential trial witnesses. Therefore, the trial court did not impair defendant's opportunity to consult with his attorney. Moreover, defendant did not indicate any difficulty in communicating with his counsel and failed to demonstrate how this order violated his right to have counsel investigate the case and prepare a defense for trial, notwithstanding the fact that some of defendant's family members may not have been able to converse directly with defendant's counsel. Defendant's second assignment of error is without merit.
Defendant's third assignment of error states:
 THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS ORAL STATEMENTS SOLICITED BY AND GIVEN TO, THE POLICE AFTER INDICTMENT.
Here, defendant complains that the police obtained a post-indictment statement from defendant in violation of his Sixth Amendment right to counsel and that such statement should have been suppressed by the trial court.
In Michigan v. Harvey (1990), 494 U.S. 344, 348,110 S.Ct. 1176, 1179, 108 L.Ed.2d 293, the Supreme Court stated:
 in a line of cases beginning with Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246
(1964), and extending through Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481
(1985), the Court has held that once formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case in chief statements "deliberately elicited" from a defendant without an express waiver of the right to counsel. See also United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). For the fruits of post indictment interrogations to be admissible in a prosecution's case in chief, the State must prove a voluntary, knowing, and intelligent relinquishment of the Sixth Amendment [494 U.S. 349] right to counsel. Patterson v. Illinois, 487 U.S. 285, 292, and n. 4, 108 S.Ct. 2389, 2394-2395, and n. 4, 101 L.Ed.2d 261 (1988); Brewer, supra, 430 U.S., at 404, 97 S.Ct., at 1242. We have recently held that when a suspect waives his right to counsel after receiving warnings equivalent to those prescribed by Miranda v. Arizona, supra, that will generally suffice to establish a knowing and intelligent waiver of the Sixth Amendment right to counsel for purposes of post indictment questioning. Patterson v. Illinois, supra.
In Michigan v. Jackson, 475 U.S. 625,106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Court created a bright-line rule for deciding whether an accused who has "asserted" his Sixth Amendment right to counsel has subsequently waived that right. Transposing the reasoning of Edwards v. Arizona, 451 U.S. 477,101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which had announced an identical "prophylactic rule" in the Fifth Amendment context, see Solem v. Stumes, 465 U.S. 638, 644,104 S.Ct. 1338, 1342, 79 L.Ed.2d 579 (1984), we decided that after a defendant requests assistance of counsel, any waiver of Sixth Amendment rights given in a discussion initiated by police is presumed invalid, and evidence obtained pursuant to such a waiver is inadmissible in the prosecution's case in chief. Jackson, supra,475 U.S., at 636, 106 S.Ct., at 1411. Thus, to help guarantee that waivers are truly voluntary, Jackson established a presumption which renders invalid some waivers that would be considered voluntary, knowing, and intelligent under the traditional case-by-case inquiry called for by Brewer v. Williams.
Applying the foregoing, we note that a careful review of the record in this instance indicates that defendant did not request counsel; he simply stated that he had counsel in Michigan and that this attorney recommended local counsel. He did not wish to speak with this attorney. (Tr. 23). This case is therefore not governed by the prophylactic rule announced in Michigan v. Jackson, supra, but is instead governed by the voluntary, knowing, intelligent relinquishment rule set forth in Patterson v. Illinois, supra. Further, because the record demonstrates that defendant received Miranda warnings before giving this post indictment statement, we are unable to conclude that the trial court erred in denying defendant's motion to suppress this statement. Accord Patterson v. Illinois, supra.
This assignment of error is without merit.
Defendant's fourth assignment of error states:
 THE COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON THE DEFENSE OF SELF-DEFENSE, AS WAS REQUIRED BY THE EVIDENCE.
Within this assignment of error, defendant contends that he was entitled to an instruction on self-defense in accordance with the evidence submitted to the court.
A claim of self-defense requires evidence that the defendant was not at fault in creating the situation giving rise to the affray, that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was by the use of force, and that he did not violate any duty to retreat or avoid the danger. State v. Kershaw (1999),132 Ohio App.3d 243, 249.
Our review of the record establishes that the trial court did not err in refusing to give the requested self-defense instruction. As detailed above, defendant denied participating in the altercation, and denied that he used any force and, thus, was not entitled to a self-defense instruction.
Defendant's fourth assignment of error is without merit.
Defendant's fifth assignment of error states:
 THE APPELLANT WAS DENIED DUE PROCESS WHEN THE COURT FAILED TO INSTRUCT THE JURORS THEY HAD TO BE UNANIMOUS ON ONE OR THE OTHER OF THE ALTERNATIVE THEORIES OF POSSIBLE GUILT SUBMITTED TO THEM.
Within this assignments of error, defendant maintains that the trial court erred in failing to instruct the jury that a unanimous verdict was required in order to convict defendant pursuant to the principal offender or aider and abettor theories of the state's case.
As we noted in our discussion of the first and sixth assignments of error, the state is permitted by the express terms of R.C. 2923.03(F), to state a charge of complicity in terms of aiding and abetting or in terms of the principal offense. Thus, where as here, the theory is that defendant aided and abetted in the principal offense of involuntary manslaughter, both the meaning of involuntary manslaughter and the meaning of aiding and abetting must be explained to the jury. Moreover, since the state presented evidence from which a reasonable juror could conclude that defendant was guilty as an aider and abettor, the court's instruction was proper. See Hill v. Perini, supra. There was no error in this instance.
This claim is without merit.
Defendant's seventh assignment of error states:
 THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILTY BEYOND A REASONABLE DOUBT; HENCE THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CLOSE OF ALL THE EVIDENCE.
For his final assignment of error, defendant maintains that the trial court erred in denying his motion for acquittal.
A Crim.R. 29 motion for judgment of acquittal is properly denied where the evidence is such that reasonable minds could reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
R.C. 2903.04 states:
Involuntary manslaughter
 (A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.
 (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor.
 (C) Whoever violates this section is guilty of involuntary manslaughter, Violation of division (A) of this section is an aggravated felony of the first degree. Violation of division (B) of this section is an aggravated felony of the third degree.
"Evidence of aiding and abetting another in the commission of a crime may be demonstrated by both direct and circumstantial evidence. Thus, '[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" State v. Cartellone (1981),3 Ohio App.3d 145, 150-151, citing State v. Pruett (1971),28 Ohio App.2d 29, 34. A defendant's mere association with a principal, or mere approval or acquiescence in the principal's actions, is not enough to establish that the defendant was an aider and abettor. The defendant must have assisted, incited or encouraged another to commit the offense. State v. Sims (1983), 10 Ohio App.3d 56, 58-59.
In this instance, the trial court did not err in refusing to grant defendant's Crim.R. 29 motion for acquittal. Reasonable minds could reach different conclusions as to whether defendant participated in the first attack then incited and participated in the second attack which caused the death of Stumpf.
This assignment of error is without merit.
It is ordered that appellee recover of appellant its costs erein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any mail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
BLACKMON, J., AND OCCO, J., CONCUR.
ANN DYKE, ADMINISTRATIVE JUDGE