OPINION
Appellant Steven C. Jewell appeals a judgment of the Delaware County Common Pleas Court convicting him of 27 counts of theft and forgery:
ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS THE ORAL STATEMENTS SOLICITED BY AND GIVEN TO DETECTIVE BERRY AT THE DELAWARE COUNTY JAIL AFTER THE DEFENDANT WAS INDICTED AND ARRAIGNED.
 II. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO DISMISS COUNTS 18 AND 20-29 OF THE INDICTMENT AS THERE WAS NO PROPER VENUE WITHIN DELAWARE COUNTY AND THEREFORE THE COURT DID NOT HAVE JURISDICTION OVER THESE COUNTS.
 III. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S REQUEST FOR A JURY INSTRUCTION RELATING TO THE ALLEGED VICTIM'S FACILITATION OF THE OFFENSES AS ALLEGED IN COUNTS 1-16 OF THE INDICTMENT.
 IV. THE VERDICT OF GUILTY AS TO THE CHARGE OF THEFT AS ALLEGED IN COUNTS 5 AND 6 OF THE INDICTMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 V. THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO SUSTAIN THE DEFENDANT'S CONVICTION OF THEFT AS ALLEGED IN COUNT 17 OF THE INDICTMENT AND THE VERDICT OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VI. THERE WAS INSUFFICIENT EVIDENCE AS A MATTER OF LAW TO SUSTAIN THE DEFENDANT'S CONVICTION OF THEFT AS ALLEGED IN COUNT 18 OF THE INDICTMENT AND THE VERDICT OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VII. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A TRIAL BY A FAIR AND IMPARTIAL JURY WHEN THE TRIAL COURT REFUSED TO EXCUSE CERTAIN JURORS FOR CAUSE AFTER THEY HAD CLEARLY ACKNOWLEDGED A BIAS AGAINST THE DEFENDANT'S CASE.
 VIII. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT PERMITTED THE STATE TO INTRODUCE EVIDENCE RELATING TO TRANSACTIONS BETWEEN THE DEFENDANT AND PATRICIA AND WILLIAM RISDON.
At the 1997 Ohio State Fair, Colleen Giblin Barta deposited a card into a box asking to have someone from Ohio Energy Contractors contact her regarding a sunroom addition. Appellant came to her house representing Ohio Energy. Appellant arranged a loan for her to pay for her sunroom, and offered to make her life easier by involving her in a wholesale automobile business. Her role in the automobile business was to provide the money to start the business. At appellant's urging, Ms. Barta received several loans on credit cards. She also borrowed from her daughter's college fund, her savings account, her 401-K plan and her life insurance policy to provide money to appellant to start the business. Appellant never had documents drawn up for the loan transactions to start the business. Appellant told her that he could save her money on the sunroom if she wrote the checks directly to him, instead of to Ohio Energy Contractors. These funds were not used to pay for the sunroom, and she ultimately paid twice for the sunroom. Ms. Barta filed for bankruptcy in July of 1998, after appellant lost all of her money she provided to him. In October of 1998, appellant approached Ms. Barta again, wanting to deposit a check into her account, from which he could withdraw cash. She lost over $100,000 to appellant.
In August of 1997, Kay Freshwater Inscho met appellant after she deposited her name into an Ohio Energy Contractor's box in a home improvement store. Appellant was the Ohio Energy salesman who came to her home to discuss a sunroom addition. Several weeks later, Ms. Inscho began dating appellant. On several of their dates they went to horse races. They also took trips to Kentucky and Florida, where they went to the race track, and appellant gambled heavily.
In February of 1998, appellant moved in with Ms. Inscho. He proposed starting a used car business, and convinced her to take out loans to finance the business. She took four loans to help appellant finance the business. In March of 1998, Ms. Inscho took out a line of equity on her home, that appellant was to pay off with the proceeds from a mutual fund in September of 1998. Ms. Inscho never gave appellant access to the line of equity, and was not aware that there were pre-printed checks available to access the account. Three checks were drawn on this account without her knowledge in April of 1998, and deposited into appellant's bank account.
When Ms. Inscho did not receive her income tax refund in 1998, she contacted the IRS, and learned that her refund check had been cashed. Appellant admitted to her that he forged her name on the check and cashed it. In May of 1998, appellant borrowed $15,000 from Ms. Inscho, claiming he was in trouble with the IRS. He never paid this money back. In June 1998, she discovered that appellant had taken several of her personal checks, and had also used her ATM card to withdraw cash from her checking account. While her understanding was that appellant was to pay back the $8,000 loan she had taken from her credit union to start the car business, she later learned that appellant used a cashier's check drawn on her line of equity to pay back the loan.
In March of 1999, Ms. Inscho received a statement on her line of equity, and realized three checks had been cashed against the line without her permission, for $23,500; $10,000; and $28,000. The bank officer who processed the line of equity noted that three days after the closing, appellant came to the bank and asked her to prepare three cashiers checks drawn on the line of equity totaling $39,000. One check was for $10,000, made payable to appellant.
William Carr was a friend of appellant. In January of 1998, Carr went to Florida with appellant and Ms. Inscho. Appellant borrowed money from Carr while in Florida, and eventually paid him with a cashier's check for $20,000 drawn on Ms. Inscho's line of equity. Carr cashed the check, giving $14,000 back to appellant.
In January of 1998, William and Patricia Risdon were approached by a representative of Ohio Energy Contractors at their home. Later, a salesman, appellant, from Ohio Energy came to their home. Appellant offered to help them by consolidating their loans and re-financing their home. He obtained all of their personal information to fill out an application to refinance the home. He told them that in order to obtain a lower interest rate, they needed to show a lot of activity on their credit report. To increase the activity on their credit report, the Risdons took out seven loans between April and July of 1998, totally around $40,000. The proceeds of the loans were given to appellant to hold in trust, and he was to make payments on the loans from the interest that accumulated on the trust account. Appellant never made these payments. Appellant also applied for a credit card in William Risdon's name, taking it from the mailbox without their knowledge, and obtaining approximately $17,000 in cash from the credit card. Appellant deposited several items into their checking account, asking them to draw a check on the account. However, the items he had deposited into their account bounced, and their checking account was frozen by the bank, as it was overdrawn by nearly $7,000.
Harold and Bonnie Freshwater, the parents of Kay Inscho, loaned $7,500 to appellant on June 26, 1998, allegedly to pay a debt to the IRS. He promised to repay them on August 15, when he would receive payment for an annuity. He gave them a receipt for $10,000. They loaned him the money because they thought he was going to marry their daughter Kay. However, the Freshwaters never saw appellant again, and were never paid back for the loan.
In August of 1997, Macy Jennings put her name in a box in a store for a chance to win a sunroom. She was later contacted by Ohio Energy Contractors. They sent appellant as a salesman to her home. She purchased a sunroom from Ohio Energy. Appellant offered to help consolidate all of her debt into a single loan, including the purchase price of the sunroom. In October of 1998, appellant contacted Ms. Jennings, asking to deposit a check in her account, from which she could later withdraw the cash. On two separate occasions after that date, appellant contacted Ms. Jennings, had her withdraw money from her bank account, and meet his sister to give her the cash. Ms. Jennings gave appellant approximately $13,500. The check appellant deposited into her bank account was drawn on Ms. Inscho's line of equity, in the amount of $23,500. The check was not honored, and her account was overdrawn. She lost approximately $600 through these transactions.
Amber Johnson met appellant in November of 1998 at a casino. Appellant asked her to deposit a check for $10,000 into her bank account, and a few days later he withdrew the money that had been deposited. The check was drawn on the account of Kay Inscho, and appellant filled in the check, and signed it. After he withdrew the money, she never saw appellant again.
Paul Hornung testified that appellant was formerly married to Hornung's sister, Brenda Jewel. Appellant contacted Hornung in late November or early December of 1998, telling him he had deposited a check for $28,000 into Hornung's checking account, and wanted Hornung to withdraw cash for appellant. The check was drawn on the account of Kay Inscho. Several days later, Hornung noticed that several of his personal checks were missing from his home. Four checks were drawn on his account without his permission by appellant, totaling more than $15,000.
On December 17, 1999, the Delaware County Grand Jury returned a 30 count indictment against appellant charging him with 13 counts of theft in violation of R.C. 2913.02(A)(1), 6 counts of theft in violation of R.C. 2913.02(A)(3), 4 counts of forgery in violation of R.C.2913.31(A)(1), and 7 counts of forgery in violation of R.C.2913.31(A)(3). Each of the counts alleged that the offenses occurred as part of a continuing course of conduct in Delaware County and Franklin County, Ohio. The first 16 counts of the indictment all related to Kay Inscho, who was a resident of Delaware County. Count 17 related to the incident involving her parents, which also occurred in Delaware County. The remaining counts all related to transactions occurring in Franklin County. Prior to trial, count 30, involving the Risdons, was severed prior to trial, and eventually dismissed. Upon appellant's Crim. R. 29 (A) motion for directed verdict of acquittal, counts 19 and 29 were dismissed by the trial court. Count 19 charged appellant with theft by deception, with the named victim being Brenda Jewel, his ex-wife. Count 29 charged appellant with theft, with the named victim being Paul Hornung. Following a jury verdict of guilty on the remaining counts appellant was convicted of 12 counts of theft in violation of R.C. 2913.02(A)(1), 4 counts of theft, in violation of R.C. 2913.02(A)(3), 4 counts of forgery, in violation of R.C. 2913.31(A)(1), 7 counts of forgery in violation of R.C. 2913.31(A)(3). He was sentenced to a total of 15 years incarceration.
 I
Appellant argues that the court erred in overruling his motion to dismiss an incriminating statement he gave to a law enforcement officer after his arrest and arraignment. Appellant argues that he was not given his warnings pursuant to Miranda v. Arizona (1966), 384 U.S. 436. In this statement, appellant asked Detective Randy Pohl to tell Kay Freshwater Inscho that if she would drop the criminal charges against him, he would provide her with the names of people who assisted him in taking her money, and she could sue them to get her money back.
After a formal accusation has been made, and a defendant has asserted his Sixth Amendment right to counsel, the police may no longer elicit information from an uncounseled defendant that may have been proper at an earlier stage of the investigation. Michigan v. Jackson (1986),475 U.S. 625. If police initiate an interrogation after a defendant's assertion of his right to counsel at an arraignment or similar proceeding, any waiver of that right for a police-initiated interrogation is invalid. Id. There is a strong presumption against finding a waiver of counsel, and when an accused asserts an invalid waiver, the burden shifts to the prosecution to show by a preponderance of the evidence that the defendant waived his right to counsel. Colorado v. Connelly (1986), 479 U.S. 157. However, nothing in the Sixth Amendment prohibits a suspect charged with a crime and represented by counsel from voluntarily choosing to speak with police in the absence of an attorney. Michigan v. Harvey (1990),494 U.S. 344, 352. A defendant's Sixth Amendment's waiver of counsel is valid where a confession is self-initiated and voluntary.Patterson v. Illinois (1988), 487 U.S. 285, 290-91.
In the instant case, the trial court, sitting as the finder of fact, considered the evidence presented at the suppression hearing, and concluded that the statement appellant gave to Detective Pohl was voluntary and self-initiated. The written statement of Detective Pohl states that on April 16, 1999, he received information from employees of the county jail that appellant wanted to talk with him. He requested that the jailers remove appellant from his cell block and take him to a room in the booking area of the jail. He asked appellant if his attorney knew he wanted to speak with police. Appellant told the detective that he was not concerned about his attorney, but wanted to talk to the officer about relaying information to Ms. Freshwater-Inscho. The court concluded from the testimony at the hearing, and the narrative written by the officer, that appellant initiated contact with the detective. While appellant testified that he did not request to talk to the detective, but rather was approached by the detective, the court did not find this testimony to be credible. The credibility of witnesses during a motion to suppress hearing is a matter for the trier of fact, not the reviewing court. Statev. Fanning (1982), 1 Ohio St.3d 19.
The first assignment of error is overruled.
 II
Appellant argues that the court erred in overruling his motion to dismiss count 18 and counts 20-29, for lack of venue. Appellant argues that the counts were properly venued in Franklin County, rather than Delaware County.
We note at the outset that count 29 was dismissed by the court on other grounds, and with the agreement of the State of Ohio. Appellant's argument that this count was not properly venued in Delaware County is therefore moot.
All 30 counts of the indictment alleged that the offenses occurred as part of a continuing course of conduct in Delaware and Franklin County, Ohio.
R.C. 2901.12, governing venue, provides in pertinent part:
 (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish such course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 (1) The offenses involved the same victim, or victims of the same type or from the same group.
 (2) The offenses were committed by the offender in his same employment, or capacity, or relationship to another.
 (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 (4) The offenses were committed in furtherance of the same conspiracy.
 (5) The offenses involved the same or a similar modus operandi.
 (6) The offenses were committed along the offender's line of travel in this state, regardless of his point of origin or destination.
Count 18, involving Macy Jennings, arose out of appellant appearing on behalf of his employer, Ohio Energy Contractors, at her home, in response to her placing her name in a box in a store concerning a sunroom. In his subsequent financial dealings regarding the sunroom, Ms. Jennings lost $600 to appellant. Thus, the offense related to Ms. Jennings was committed by appellant in his same employment, capacity, or relationship to her, as the counts which occurred in Delaware County concerning Kay Freshwater-Inscho.
Similarly, count 20, related to Colleen Giblin Barta, resulted from appellant's employment at Ohio Energy Contractors. After she placed her name on a card in a box at the Ohio State Fair, appellant appeared at her door as a salesman on behalf of his employer. He then convinced her that she could save money on the sunroom by writing checks directly to him, instead of his employer, and convinced her to help him set up a used car business to make more money for her. Because the offense was committed by appellant in his same employment as the multitude of counts related to Kay Freshwater-Inscho, which occurred in Delaware County, this count was properly venued in Delaware County as well.
Counts 21 through 28 all involve Paul Hornung as the victim. Hornung knew appellant not through his employment with Ohio Energy Contractors, but rather because appellant was formerly married to Hornung's sister. However, his contact with Hornung began when he told Hornung he had deposited a check for $28,000 into Hornung's checking account, and wanted Hornung to withdraw money for appellant. This check was drawn on the account of Kay Freshwater-Inscho. All counts involving Ms. Inscho arose out of Delaware County. Appellant further drew several checks on Hornung's account without his permission following this deposit. These offenses were committed as part of the same transaction or chain of events, and in furtherance of the same purpose or objective. The evidence reflects that appellant, in his contact with all of the victims, was attempting to finance his gambling debts.
All of the instant offenses were properly venued in Delaware County pursuant to R.C. 2901.12 (H). The second assignment of error is overruled.
 III
In his third assignment of error, appellant alleges that the trial court erred in denying his request for a jury instruction that Ms. Freshwater-Inscho facilitated the offenses charged in counts 1 through 16 of the indictment.
Appellant relies on State v. Mehozoneck (1983), 8 Ohio App.3d 271, in support of his proposition. In that case, the employer originated a "sting" to test the honesty of its own security guards by staging a series of mock thefts. The court in that case concluded that the trial court erred in accepting a plea of no contest from the security guards, who had cooperated with the purported thief, as the employer has consented to the removal of its property. Id. That case is inapposite from the instant case.
In the instant case, the facts reflect that Ms. Inscho facilitated the offenses only to the extent that she believed she was helping appellant finance a used car business. Further, she believed that she was engaged to marry appellant at the time she loaned him money. As to counts 1 and 2, she testified that she never gave appellant permission to have the check, that she had not signed the check, the check appeared to be written in his writing, and contained his endorsement on the back. As to counts 3 and 4, she testified that she never received her refund check from the IRS, and when the IRS sent her a copy of the cashed check, appellant admitted to her that he had signed her name and cashed the check. As to counts 5 and 6, she testified that she never received the checks for the line of equity on her home, and never gave appellant permission to access the line of equity. However, a check drawn on the line of equity was deposited into appellant's checking account. As to counts 7 and 8, she again testified that she did not give appellant permission to access the line of equity through use of the checks, yet this check, drawn on the line of equity, was deposited in appellant's account. Counts 9 and 10 relate to yet another check on the line of equity which she testified she never gave appellant permission to access. As to counts 11 and 12, appellant testified that he did not know Macy Jennings, and had never written her a check. Ms. Jennings testified that she had never seen the check, and did not write it or deposit it in her account, but rather appellant asked to put a check in her account, then had her withdraw cash and give it to him.
As to counts 13 and 14, Ms. Inscho testified that she did not write the check to Paul Hornung and did not issue it to him. Mr. Hornung testified that he did not receive the check from Inscho, and that the check had been deposited into his account by appellant.
Similarly, regarding count 15, Ms. Inscho testified that she did not know Amber Johnson, had never written a check to her, and the check appeared to be written by appellant. Ms. Johnson testified that appellant gave her the check to deposit in her account, and wrote it and signed it himself. She did not know Ms. Inscho. Count 16 represents the total loss suffered by Ms. Inscho as the result of appellant's actions.
As there is no evidence to support appellant's claim that she facilitated the crime, the court did not err in denying his request for a jury instruction that Ms. Inscho had facilitated the offenses charged in counts 1 through 16 of the indictment. The third assignment of error is overruled.
 IV
Appellant alleges that the charges of theft, charged in counts 5 and 6, are against the manifest weight of the evidence. He argues that the weight of the evidence supports a finding that despite her "fuzzy denial" at trial, Kay gave her consent to the deposit of this check, as indicated by the testimony of an employee of the bank.
Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380,387. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the court sits as a thirteenth juror, and disagrees with the fact finder's resolution of conflicting testimony. Id. The court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial shall be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
On count 5, the State was required to prove beyond a reasonable doubt that appellant, with purpose to deprive Inscho, knowingly obtained or exerted control over check number 1001, without her consent. R.C.2913.02(A)(1). Ms. Inscho testified that appellant did not have permission to have that check, and she was not even aware of the existence of the checks drawn on the home equity account. While a bank employee testified that she had telephoned Ms. Inscho and received approval to deposit the check into appellant's account, Ms. Inscho testified that while she remembered the phone conversation, she did not give approval to deposit the check in appellant's account. The jury did not lose its way in weighing the credibility of the witnesses.
On count 6, the State is required to prove beyond a reasonable doubt that appellant, with purpose to defraud, uttered or possessed with purpose to utter, check number 1001, knowing it to be forged. Again, Ms. Inscho testified she never received any checks for the line of equity, and never gave appellant permission to access the line of equity. The check was deposited into appellant's checking account on April 2, 1998. Therefore, as she testified she did not receive the checks or write on the checks, the writing on the checks had to have been forged.
Appellant also argues that the counts occurred outside the time set forth in the indictment in the bill of particulars, as the indictment alleges the counts took place between March 1, 1998, and March 6, 1998, while the line of equity did not close until March 20, 1998. Appellant did not object to any error in the dates as set forth in the indictment. Further, the bank records as presented by appellant's witness, Salina Brewer, reflect that the incident occurred on March 2, 1998, rather than April 2, 1998, as reflected by other bank records. The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. State v. Sellards (1985), 17 Ohio St.3d 169. Ordinarily, the precise dates and times are not essential elements of the offense, and a certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not necessarily fatal to the prosecution. Id. Appellant has not demonstrated any prejudice by the lack of precision as to the date on which the check was executed. The fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant alleges that the judgment of conviction on count 17 was against the manifest weight of the evidence. Appellant also argues that the conviction is not supported by the sufficiency of the evidence.
Sufficiency of the evidence is a test of adequacy, and whether the evidence is legally sufficient to sustain the verdict is a question of law. Thompkins, supra, at 386.
Appellant argues that count 17, relating to Harold and Bonnie Freshwater, represented a simple loan that was not paid, and does not constitute theft by deception. However, the evidence presented at trial demonstrated that appellant did not have the intention or means of repaying the loan at the time he borrowed money, and the loan was secured under false pretenses.
Mr. Freshwater testified that he provided money to help appellant pay taxes he owed the IRS, as he believed appellant was going to marry his daughter. Although appellant represented he would repay the money in 35 days, Mr. Freshwater never saw appellant again after loaning him the money. Further, appellant asked the Freshwaters not to tell their daughter that he borrowed money from them. The evidence reflected that he did not have a job at the time he borrowed the money, and his bank account was closed because it was severely overdrawn. There was sufficient evidence from which the jury could conclude that appellant had no intention of repaying the money he borrowed, and had in fact stolen the money by deceiving them. The judgment is not against the sufficiency or manifest weight of the evidence.
The fifth assignment of error is overruled.
 VI
Appellant argues that count 18 was not supported by the sufficiency or manifest weight of the evidence. Count 18 relates to Macy Jennings.
Count 18 alleges that appellant, with purpose to deprive Macy Jennings of cash, knowingly obtained or exerted control over said property by deception, the value of said property being more than $5,000, but less than $100,000.
The evidence reflected that appellant deposited check number 1011, drawn on Ms. Inscho's account, in Macy Jennings' account. The check was written in the amount of $23,500, and was forged by appellant. Appellant then had Ms. Jennings withdraw cash from her account, and give him the cash. The check was not honored, causing her account to be overdrawn. The record reflects that Ms. Jennings lost $600 as a result of this transaction. The evidence clearly supports a judgment of conviction of theft by deception, although the amount is not more than $5,000, as charged in the indictment. Appellant moved for a judgment of acquittal on two bases: the money did not belong to Ms. Jennings, and therefore there could be no theft, and venue was improper. The court rejected both of these arguments, but based on the evidence of the amount, submitted the case to the jury with instructions to make an additional finding that the amount was less than $500, or greater than $500, but less than $5,000.
Appellant alleges that because the amount is less than $5,000, he can at most be convicted of a felony of the fifth degree. The record reflects that appellant was in fact convicted of theft on count 18 as a felony of the fifth degree. Judgment entry of sentence, March 7, 2001.
The sixth assignment of error is overruled.
 VII
Appellant argues that four potential jurors should have been excused for cause. While he was able to remove 3 of these jurors through the use of his peremptory challenges, the fourth, Ms. McNeal, was a member of the jury which decided this case. Appellant argues that he is entitled to a new trial based on Ms. McNeal being permitted to sit on the instant case.
A trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion. State v. Tyler (1990),50 Ohio St.3d 24.
During voir dire, Ms. McNeal indicated that she might have a question as to why appellant was not going to testify. She specifically stated that she was not sure it made a difference, but she would have a question as to why he did not testify. She stated that she would take all of the evidence into account, but she would wonder why he did not testify, and that could affect her decision in reaching a verdict. This information was elicited during questioning by counsel for appellant. The court then questioned the witness, explaining that appellant has a constitutional right not to testify, and the court would instruct the jury that they are not to consider the fact that he does not testify for any reason, or allow that to affect their decision in the case. He then asked Ms. McNeal if she was willing to follow that instruction, and decide the case strictly on the evidence presented as to appellant's guilt. Ms. McNeal then stated that she could do this. Tr. 64.
Appellant claims that pursuant to Crim. R. 24(B)(9), Ms. McNeal should have been excused for cause, as she is possessed of a state of mind of enmity or bias toward appellant or the State. This claim is without merit. Ms. McNeal never stated that she was biased against appellant, or that she could not be fair and impartial. She merely stated that she might wonder why he would choose not to testify. While she eventually stated upon questioning of counsel for appellant it could affect her decision, she had earlier indicated that it would not make a difference, and she would decide the case based on the evidence. Later, in response to the instructions of the court, she stated that she could base her decision on the instructions and evidence as given by the court.
Appellant also argues that the court improperly rehabilitated Ms. McNeal through the use of leading questions. This claim is without merit. The trial court was clearing up the misconceptions of the jurors regarding their duties. The court did not unduly influence the jury, or communicate that they were expected to answer in a certain way. The court informed Ms. McNeal of the law concerning appellant's constitutional right not to testify, informed her that he would be instructing her to decide the case solely on the evidence, and asked if she could do this. In response to this question, she simply answered, "yes".
The seventh assignment of error is overruled.
 VIII
Finally, appellant challenges the admissibility of the testimony of Patricia and William Risdon, pursuant to Evid. R. 404 (B). The Risdons testified concerning their dealings with appellant, which was initially charged in count 30 of the indictment, and later severed and dismissed. Appellant argues that this was inadmissible evidence of other acts, crimes, or wrongs.
Evid. R. 404 (B) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absent of mistake or accident.
Like Colleen Barta, Kay Freshwater-Inscho, and Macy Jennings, the Risdons met appellant through his job with Ohio Energy Contractors. Appellant responded to their request for information regarding a sunroom, and offered to help them with finances and save them money. Just as he did with Ms. Barta and Ms. Inscho, appellant convinced the Risdons to take out loans and give him the money. He also persuaded them to apply for additional credit cards, as he did with Ms. Barta. Appellant then used the credit cards to obtain cash advances, as he did with Ms. Barta. He overdrew the Risdons' checking account, as he did with Ms. Jennings. Appellant convinced Ms. Risdon to deposit checks into her checking account, and write checks off the account to him or provide him with cash, as he did with Ms. Jennings. The checks he had deposited in the Risdon's checking account bounced, just as they did with Ms. Jennings' account.
Appellant was taking money from the Risdons by deception at the same time he was defrauding Ms. Inscho and Ms. Barta. Appellant's defense was that Ms. Barta and Ms. Inscho were upset over romances that did not turn out the way they expected. He argued that Ms. Jennings and Mr. Hornung were attempting to make money, and tried to blame him when they got caught. He argued that the Freshwaters loaned him money that he intended to pay back. He further argued that Ms. Inscho facilitated his offenses and was a participant in his scheme. The testimony of the Risdons was admissible pursuant to Evid. R. 404 (B) to prove motive, intent, preparation, plan, and absence of mistake or accident.
The eight assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Delaware County Common Pleas Court is affirmed.
Costs to appellant.
Hon. Julie A. Edwards, P.J. Hon. W. Scott Gwin, J. Hon. William B. Hoffman, J. concur.