IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2019 Session

**STATE OF TENNESSEE v. JOSEPH WOODRUFF**

**Appeal from the Circuit Court for Madison County**
**No. 16-180, 16-181, 16-182          Kyle Atkins, Judge**

_____

**No. W2018-02083-CCA-R9-CD**

_____

We granted this interlocutory appeal to review the trial court's suppression of an incriminating statement the Defendant, Joseph Woodruff, made to police. The Defendant was arrested in May 2015 related to an aggravated robbery and an attorney was appointed to represent him. The Defendant later asked to speak with police and, following a waiver of his *Miranda* rights and without his attorney present, confessed to the robbery. Following his indictment, the Defendant sought to suppress his statement to police and, after a hearing, the trial court granted the motion to suppress. The State filed a motion for an interlocutory appeal challenging the suppression of the statement, which the trial court granted, and this court granted the State's application for a Rule 9 appeal. After review, we reverse the trial court's judgment.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley F. Champine, Assistant District Attorney General, for the appellant, State of Tennessee.

Harold E. Dorsey, Alamo, Tennessee, for the appellee, Joseph Woodruff.

**OPINION**
**I. Facts**

We review this case pursuant to our grant of the State's Rule 9 application for appeal from the trial court's grant of a motion to suppress the Defendant's June 3, 2015 statement to the police. In 2015, the Defendant was a suspect in multiple offenses related to an aggravated robbery that occurred on May 11, 2015. On May 12, 2015, an arrest warrant for the aggravated robbery was issued and the Defendant was arrested for the May 11, 2015 aggravated robbery on May 26, 2015.

The Defendant filed a motion to suppress an incriminating statement he made to the police while in custody on June 3, 2015. The trial court held a hearing on the motion, and the parties presented the following evidence: Jackson City Police Department Lieutenant Chris Chestnut testified that in May 2015, the Defendant was a suspect in a robbery he was investigating. After a brief pursuit, the Defendant was arrested and taken to the police department for questioning. Investigator Chew and Investigator Stanfill attempted to question the Defendant, but due to the Defendant's hostility the interview was "unproductive," and the Defendant was taken to jail.

Several days later, Investigator Chew requested a sample of the Defendant's DNA. The Defendant was transported to the police department, where Lieutenant Chestnut asked the Defendant for consent to take a DNA sample. The Defendant signed a consent form on June 2, 2015. Lieutenant Chestnut identified the DNA consent form and, based upon the record, it appears that the form was introduced into evidence although it is not included in the record on appeal. Lieutenant Chestnut testified that he did not attempt to question the Defendant about anything related to his pending charges but that the Defendant told Lieutenant Chestnut that he "had information on other cases" and asked whether the information could "help him" with the pending aggravated robbery charge. Lieutenant Chestnut testified about his exchange with the Defendant as follows:

> We talked very vaguely. He didn't want to give too many of the details without knowing what he was going to get.
>
> I explained to him that, you know, it wasn't a decision for me to make; that I could take the information and give it to the district attorney, but ultimately it would be their decision if and what consideration he was to get.

Lieutenant Chestnut stated that, during this conversation, he and the Defendant never discussed the pending charges, nor did Lieutenant Chestnut make any type of promise about "what kind of deal [the Defendant] would get if he had information on other unsolved cases." Lieutenant Chestnut described the conversation as "very brief." He recalled that he "took some quick notes" and told the Defendant that if he decided he wanted to speak with the police to contact "us." The Defendant was returned to the jail.

The State asked Lieutenant Chestnut if he had ever told the Defendant he "couldn't help [the Defendant] unless he confessed to the crimes he was currently charged with?" Lieutenant Chestnut responded, "At no time did I ever tell him that." Lieutenant Chestnut said that he told the Defendant that if "he wanted people to believe what he had to say, that he was going to have to tell the truth on everything, no matter what the case was."

Lieutenant Chestnut testified that the following day, June 3, 2015, the Madison County Jail notified him that the Defendant was requesting to speak with investigators. Lieutenant Chestnut identified a Miranda Rights Waiver form executed by the Defendant on June 3, 2015. Handwritten on the bottom of the page, the Defendant wrote "I Joseph Woodruff ask[ed] to speak with investigators." Following the Defendant's waiver of his right to have an attorney present, the Defendant confessed to the May 11, 2015 robbery and told investigators the location of a ski mask used during the offense. Lieutenant Chestnut stated that he did not know if the Defendant had an attorney at the time of the statement, but the Defendant did not ask for an attorney or tell Lieutenant Chestnut that he had an attorney.

City of Jackson Police Officer John Chew[1] testified about his interactions with the Defendant in June 2015 consistently with Lieutenant Chestnut's testimony. He stated that the Defendant initiated the June 3, 2015 contact with the police, and that no promises were made in exchange for the Defendant's statement. Officer Chew did not know whether the Defendant was represented by an attorney at the time of the June 3, 2015 interview.

April Cornelison testified that in June 2015 she was employed by the Madison County Public Defender's office. She did not recall representing the Defendant, but office records indicated that she was appointed to his case in June 2015. She did not recall when she was appointed to the Defendant's case, but she said that typically she was appointed after arraignment and before the initial appearance.

The Defendant testified that he was arrested on May 26, 2015, and arraigned on May 28, 2015. The Defendant said that at the arraignment the Public Defender's office was appointed to represent him. The Defendant stated that he told Investigator Chestnut that he was represented by an attorney. The Defendant recalled that his court appearance following the arraignment was on June 11, 2015. The Defendant testified that, based

---

[1] John Chew testified that, at the time of the suppression hearing, he was a Tennessee Bureau of Investigation Agent.

- 3 -

upon his belief that that he had an agreement with Lieutenant Chestnut, he waived his right to a preliminary hearing and the case was bound over to the grand jury.

After hearing the evidence, the trial court issued the following written order granting the Defendant's motion to suppress his statement to the police, finding that the Defendant's statement was a result of police initiated custodial interrogation.

1. The event date in this matter was May 11, 2015. The Defendant was detained by law enforcement May 26, 2015.

2. The Defendant was arraigned in Jackson City Court within seventy-two hours and at that arraignment was appointed an attorney.

3. On June 2, 2015, Officer Chestnut approached the Defendant about providing a DNA sample. The Defendant proceeded to tell Officer Chestnut that he had information about two unsolved murder cases and wished to give that information in exchange for a reduced sentence in the case at bar. Office[r] Chestnut replied that the Defendant would have to tell the truth in this case prior to any negotiations. (On June 3, 2015 the Defendant gave the statement in question.)

4. On June 3, 2015, the Defendant requested to speak with Investigator Chestnut.

5. On June 3, 2015, Investigator Chestnut told Defendant that he would have to tell the truth about his case prior to negotiations on the other cases Defendant had information about.

6. Defendant was represented by counsel in the present case on June 3, 2015.

7. That the Defendant's Sixth Amendment guarantee of counsel is offense specific and its purpose i[s] to protect the Defendant at critical confrontations with the State once a case is commenced on a particular crime.

8. In this present case, the Court finds based on the testimony of Inv. Chestnut, that Defendant contacted the police to talk about two (2) cases unrelated to the present case. Defendant was told, as testified by Investigator Chestnut several times, that he would have to be

truthful about his pending case first, before he could get any consideration for his help with the two (2) unrelated cases. This amounts to a police-initiated custodial questioning regarding the pending charge. Since the Defendant had an attorney for the pending charge, the police-initiated questioning was in violation of Defendant's Sixth Amendment right to counsel.

It is from this judgment that the State appeals.

## II. Analysis

The State appeals the trial court's suppression of the Defendant's statement. The State contends that the trial court relied on an incorrect statement of law: that a defendant, who has been appointed counsel, can never waive his right to counsel and speak with the police. The Defendant asks this Court to affirm the trial court. He acknowledges that he "may have initiated a conversation with [Lieutenant Chestnut] on June 2, 2015," but he asserts "that the interrogation about the events in this matter were clearly initiated by [Lieutenant] Chestnut."

It is a firmly established tenet of constitutional law that, after the initiation of formal charges against an accused, the Sixth Amendment right to counsel attaches, guaranteeing the accused the right to rely on counsel as a medium between him and the State at any critical confrontation with State officials, irrespective of coercion. *See Maine v. Moulton*, 474 U.S. 159, 176 (1985); *State v. Huddleston*, 924 S.W.2d 666, 669 (Tenn. 1996). Once formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case-in-chief statements "deliberately elicited" from a defendant without an express waiver of the right to counsel. *Michigan v. Harvey*, 494 U.S. 344, 348 (1990). The accused may not be subjected to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police. *See Edwards v. Arizona*, 451 U.S. 477 (1981).

In the present case, the Defendant's statement was made after his Sixth Amendment rights had attached. Thus, the only questions are whether the statement was made in response to improper police interrogation by Lieutenant Chestnut and the effect of the Defendant's written "waiver of rights." This determination involves a mixed question of law and fact, which this court reviews *de novo*. *See generally State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999) (citing *Harries v. State*, 958 S.W.2d 799, 802 (Tenn.

Crim. App.), *perm. to appeal denied*, (Tenn. 1997) (cases that involve mixed questions of law and fact are subject to *de novo* review)); *State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997).

In its written order, the trial court found that the Defendant initiated contact with the police. We review the trial court's findings of facts with a presumption of correctness. *See generally State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998) (appellate court should uphold trial court's decision on suppression motion unless record preponderates against finding). The relevant evidence presented at the suppression hearing consisted of the testimony of Lieutenant Chestnut and Officer Chew. Lieutenant Chestnut testified that on June 2, 2015, the Defendant voluntarily and spontaneously inquired about offering information on other unrelated cases to benefit him in the aggravated robbery case. The following day, at the Defendant's request, jail personnel requested a meeting with Lieutenant Chestnut because the Defendant wanted to speak with him. The record supports the conclusion that the Defendant initiated contact with the police.

Our next inquiry is whether the Defendant was subjected to police interrogation while in custody. *State v. Timothy Walton*, 41 S.W.3d 75, 83 (Tenn. 2001).

> [T]he term "interrogation" refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnotes omitted). There is a difference between police initiated custodial interrogation and communications, exchanges, or conversations initiated by the accused himself. *See Edwards*. It is well-established that questioning initiated by the accused is not interrogation in the *Innis* sense. *Edwards*, at 484. At the very least, the police must have asked a question that was "probing, accusatory, or likely to elicit an incriminating response" before a court may conclude that there was interrogation. *Id*. Our supreme court has held that follow-up questions by a police officer to a defendant's initial volunteered statement do not constitute an interrogation if the "questions are neutral attempts to clarify what has already been said rather than apparent attempts to expand the scope of the statement already made." *See Walton*, 41 S.W.3d at 85-86 (citing WAYNE R. LAFAVE, ET AL., CRIMINAL PROCEDURE § 6.7(d), at 566-57 (2d ed.1999)).

In this case, on June 2, 2015, the Defendant made an unsolicited comment offering information concerning unrelated cases in exchange for leniency in the aggravated robbery case. The police responded to his inquiry about leniency and told the Defendant to "contact" them if he wanted to talk about the cases. Here, the only possible statement

made by Lieutenant Chestnut to the Defendant that could arguably be considered probing, accusatory, or likely to elicit an incriminating response was "if [you are] going to be giving information on other cases and want[ ] people to believe what [you have] to say, [then you are] going to have to tell the truth on everything, no matter what the case." In response, the Defendant did not make any incriminating statements about the robbery or statements about the unrelated cases. He returned to jail and, on the following day, June 3, 2015, the Defendant requested to speak with the police. There is no constitutional protection from statements volunteered by the accused. *Edwards*, 451 U.S. at 484. When a defendant makes a statement without being questioned or pressured by a government agent, the statement is admissible, if the statement was freely and voluntarily made by the defendant. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986); *Michigan v. Tucker*, 417 U.S. 433, 441 (1974).

Moreover, the Defendant signed a waiver of his right to an attorney prior to the June 3, 2015 statement. Our review of the trial court's order shows that the trial court correctly considered the Defendant's Sixth Amendment guarantee of counsel but failed to include in its analysis the effect of the Defendant's waiver of his right to remain silent and his right to have his attorney present. Although, after the invocation of the right to counsel, the admission of a defendant's incriminating statements deliberately elicited by police officers in the absence of the defendant's attorney violates Sixth Amendment principles, a defendant can waive his Sixth Amendment right to counsel. *Montejo v. Louisiana*, 556 U.S. 778 (2009); *Michigan v. Harvey*, 494 U.S. 344, 349 (1990); *Brewer v. Williams*, 430 U.S. 387, 398 (1977). The *Montejo* Court observed:

> [o]ur precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. *Patterson v. Illinois*, 487 U.S. 285, 292, n. 4, 108 S. Ct. 2389, 101 L.Ed.2d 261 (1988); *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L.Ed.2d 424 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. *Michigan v. Harvey,* 494 U.S. 344, 352-353, 110 S. Ct. 1176, 108 L.Ed.2d 293 (1990). And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the Fifth Amendment[.]

*Id*. For Sixth Amendment purposes, "[t]he U[nited] S[tates] Supreme Court has clearly sanctioned the admissibility of a statement given after the appointment of counsel and even after defendant has 'expressed his desire to deal with police only through counsel,'

where defendant initiates further communication, electing 'to face the state's officers and go it alone,' and knowingly and intelligently waives his Sixth Amendment right to counsel. *State v. Cauthern*, 778 S.W.2d 39, 46 (Tenn. 1989) (quoting *Patterson v. Illinois*, 487 U.S. 285 (1988); *see also Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983).

In this case, the Defendant clearly understood that Lieutenant Chestnut was a police officer assigned to his case. The Defendant had previously demonstrated that he understood his right to remain silent because, when he first initiated a discussion about information on the unrelated cases, he was "vague," wanting to see first how the information might benefit him. He did not at that time disclose the information to the officers about the unrelated cases or provide information on his robbery charge. Instead he returned to the jail. The following day, the Defendant initiated contact with the police through jail personnel, indicating his decision to speak with them. Before the Defendant made any statement on June 3, 2015, Lieutenant Chestnut informed the Defendant that he had the right to remain silent and to have his attorney present, and the Defendant signed the *Miranda* waiver and chose to make a statement about his aggravated robbery charge. Based on our review, we conclude that the Defendant voluntarily, knowingly, and intelligently waived both his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel.

Given the trial court's findings that the Defendant initiated the discussion with Lieutenant Chestnut and the Defendant's waiver of his right to remain silent and his right to have an attorney present, we conclude that the Defendant's statement was not the product of unconstitutional custodial interrogation. Accordingly, the statement should not have been suppressed.

We note that the appellate record includes a motion filed September 4, 2018, in the trial court by the Defendant, seeking to suppress the results of the DNA test. In the motion, the Defendant asserts that his Sixth Amendment right to counsel was violated when Lieutenant Chestnut approached the Defendant to request the Defendant's consent for a warrantless search for DNA evidence. A disposition of this motion is not included in the record, and the Defendant did not include this theory in the motion to suppress the statement which is the subject of this appeal. Thus, this opinion does not address whether Investigator Chestnut violated the Defendant's Sixth Amendment rights by initiating contact with Defendant to ask the Defendant to give consent for a warrantless search for the Defendant's DNA, and if so, whether that violation extended to affect the admissibility of the Defendant's statement the following day.

## II. Conclusion

In accordance with the aforementioned reasoning and authorities, we reverse the judgment of the trial court, and remand this case to the trial court for further proceedings consistent with this opinion.

_____

ROBERT W. WEDEMEYER, JUDGE